UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NISAR NAJMUDDIN MULLA,

        Petitioner,

v.

Case Number 16-10254
Honorable David M. Lawson

REBECCA ADDUCCI, Director, Detroit Field Office,
United States Immigration and Customs Enforcement,
SARAH SALDANA, Director, United States
Immigration and Customs Enforcement, and
LORETTA LYNCH, United States Attorney General,

        Respondents.

_____/

## **OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner Nisar Najmuddin Mulla is in the custody of the United States Immigration and Customs Enforcement agency (ICE), awaiting deportation to his home country of Pakistan. He has been in custody since June 22, 2015, and he seeks release under supervision via his petition for a writ of habeas corpus filed under 28 U.S.C. § 2241 on January 25, 2016. After the government filed a response, the Court held a hearing on the petition on March 14, 2016, which was continued to April 5, 2016 to permit the government to obtain more information on its pending request to the government of Pakistan for travel documents. Mulla argues that based on the information he has received, there is no significant likelihood that he will be sent to Pakistan in the reasonably foreseeable future. He insists that his continued detention indefinitely is unconstitutional. Because the most recent request for travel documents has been pending since the end of November 2015, the typical time frame for the issuance of such documents has not elapsed, the government of Pakistan had issued travel documents for the petitioner in the past, and there is no evidence that Pakistan will

refuse to issue them again, Mulla has not made an adequate showing at this time for release. Therefore, the Court will deny the petition.

I.

According to the petition, petitioner Nisar Mulla is a citizen of Pakistan and was a lawful permanent resident of the United States since August 28, 1975. On May 8, 1981, he was convicted of conspiracy to possess and distribute cocaine contrary to 21 U.S.C. § 846, 841(a)(1), 841(b)(1)(A). Based on that conviction, removal proceedings were commenced against Mulla on January 12, 1990. The immigration court entered an order of removal on November 6, 1990. Mulla appealed the order of removal to the Board of Immigration Appeals, which remanded the case. Upon remand, the immigration court entered a second order of removal on May 12, 1994. In October 2000, Mulla filed a motion to reopen the proceedings in the immigration court, which was denied in December 2002. In January 2005, Mulla filed an application for asylum, which was denied in December 2006. Mulla appealed the denial of that application, but his appeal was dismissed. In August 2009, Mulla filed a second motion to reopen, which was denied in June 2010. After the denial of his second motion, Mulla filed a petition for review in the Sixth Circuit, which was denied in May 2012. In May 2015, ICE placed Mulla on GPS monitoring and began the process to obtain travel documents for his removal. After the Pakistani government responded encouragingly to ICE's initial request for a travel document for Mulla, the agency took him into custody on June 22, 2015 in anticipation of enforcing his final removal order. Mulla has been continuously detained since then.

The respondents assert, and Mulla does not dispute, that Pakistan issued a travel document for Mulla that was valid from July 1 through July 31, 2015, and the agency scheduled him for removal on July 7, 2015. However, on July 7, 2015, Mulla filed another motion to reopen his

removal proceedings and a motion for stay of removal. ICE asserts that Mulla was at the airport waiting with ICE officers to board his flight when they received word that the BIA had granted his motion to stay. Mulla remained in custody, however.

On October 14, 2015, the BIA denied Mulla's motion to reopen. Mulla filed another motion for a stay of deportation, which was denied. Mulla appealed the BIA's decision to the Sixth Circuit, but he voluntarily dismissed his appeal on December 29, 2015.

The government contends that, if not for the eleventh hour stay, ICE would have completed Mulla's removal on July 7, 2015. At the April 5, 2016 hearing, ICE agent Jason Zywica testified that a second request to Pakistan for travel documents was made at the end of November 2015. The government acknowledges that since July, the process for obtaining travel documents from Pakistan has become "more complicated." And the government candidly informed the Court that since the terrorist bombings in Paris on November 13, 2015, the Pakistani government has added another layer of security screening to its travel document issuance process. As a result, more time is required now than when ICE requested the first travel document, which had been issued within about six weeks of the first request.

Agent Zywica testified that he requested Mulla's travel document on November 30, 2015. He says that the government of Pakistan has not indicated a reluctance to issue a second travel document, but he has not received a positive response, either. And his experience has been that since the Paris bombings, travel documents from Pakistan have issued about six months after a request has been made; whereas before the bombings the average issue time was three months. He has learned that Pakistan has issued three travel documents since the bombings, but he has not seen one personally. He also acknowledged that every case is "different," and he is not able to predict

-3-

when a travel document will arrive. And he admitted that he has no information that enables him to predict with any certainty when Pakistan will issue a travel order for Mulla.

## II.

Congress has prescribed that once an alien has been ordered to be removed from the United States, "the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." 8 U.S.C. § 1231(a)(1)(A). Moreover, "[d]uring the removal period, the Attorney General shall detain the alien." *Id.* § 1231(a)(2). And Congress has authorized the Attorney General (now the Secretary of the Department of Homeland Security) to detain such an alien beyond the 90-day removal period under certain circumstances:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the [Secretary] to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

*Id.* § 1231(a)(6). However, "[i]n *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Court interpreted this provision to authorize the Attorney General (now the Secretary) to detain aliens . . . only as long as 'reasonably necessary' to remove them from the country." *Clark v. Martinez*, 543 U.S. 371, 373 (2005) (quoting *Zadvydas*, 533 U.S. at 689, 699). The *Zadvydas* Court held that reading § 1231(a)(6) to authorize indefinite detention would render the statute unconstitutional. *Zadvydas*, 533 U.S. at 690. Therefore, the Court "construe[d] the statute to contain an implicit 'reasonable time' limitation, the application of which is subject to federal-court review." *Id.* at 682.

The Supreme Court held in *Zadvydas* that detention of an alien subject to removal due to a criminal conviction will be presumptively reasonable for up to six months. However, "[a]fter this 6-month period, once the alien provides good reason to believe that there is no significant likelihood

of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701. "[F]or detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Ibid.* "This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Ibid.*

The petitioner does not dispute that he falls under the second category of aliens eligible for extended detention under § 1231(a)(6), because he is subject to a final order of removal based on his conviction for a crime involving controlled substances. Nevertheless, it is well established that extended detention under § 1231(a)(6) is presumptively reasonable only up to six months, and that, after six months, continued detention is no longer authorized where there is "no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. It is undisputed here that the petitioner has been detained longer than the six-month presumptively reasonable period under *Zadvydas*.

There is no bright-line test for measuring the "reasonable time" limitation engrafted onto § 1231(a)(6). *Ly v. Hansen*, 351 F.3d 263, 271 (6th Cir. 2003) (stating that "courts must examine the facts of each case[] to determine whether there has been unreasonable delay in concluding removal proceedings"). In later cases, however, the Supreme Court has clarified that the reasonableness of the detention must be assessed in light of the constitutional provision that the *Zadvydas* Court found to be in play: the Due Process Clause of the Fifth Amendment that protects the detainee's liberty interest. *Demore v. Kim*, 538 U.S. 510, 527-31 (2003). The Court in *Demore* dealt with the statute

that authorized detention without bail of deportable criminal aliens pending their removal proceedings. In finding the aliens' due process argument premature, the Court distinguished *Zadvydas* because deportation of the detainees in that case was found to be "no longer practically attainable," *id.* at 517 (citing *Zadvydas*, 533 U.S. at 690); and, due to the individual circumstances of the two aliens before the *Zadvydas* Court, their detention "was 'indefinite' and 'potentially permanent,'" *id.* at 528 (citing *Zadvydas*, 533 U.S., at 690-91). That was not the case in *Demore*, where the alien was detained pending a removal proceeding with a typical calendar, so that the "detention ha[d] a definite termination point." *Id.* at 529.

In this case, the petitioner has been in custody awaiting removal for nearly a year. But that length of time does not reflect complications that ICE has encountered in effecting his removal. Rather, much of the delay has been attributable to the petitioner's own efforts at pursuing remedies to forestall or reverse the deportation order. He is entitled to follow that course, certainly, but his effort to employ that delay to establish that his detention is "indefinite" is unconvincing.

Moreover, far from establishing that there is no significant likelihood that Mulla will be deported in the reasonably foreseeable future, the evidence suggests that he probably will receive travel orders from Pakistan within the next couple of months. Pakistan issued travel orders last summer. The process since has grown more complicated, but ICE agent Zywica suggested a six-month time frame, which has not yet elapsed since the last request on November 30, 2015. The present delay pales in comparison to the prospects for deportation in *Zadvydas*, where the government could not find a country that would agree to accept the two aliens in that case, or in *Ly v. Hansen*, where the removal proceeding itself was unreasonably lengthy. *See Ly*, 351 F.3d at 271-72.

It is true that agent Zywica could not provide an exact date for the travel orders, but that does not mean that Mulla's detention does not have a "definite termination point." The evidence establishes that the United States has a repatriation agreement with the government of Pakistan, travel orders for Mulla were issued in the past (although they have expired), Pakistan has not refused to reissue the travel orders, and the typical time frame from request to issuance has not yet elapsed. ICE has not been able to furnish an exact date for deportation. However, "[m]erely alleging that a date for travel has not yet been set[] is insufficient to demonstrate indefinite detention." *Jiang Lu v. U.S. ICE*, 22 F. Supp. 3d 839, 843 (N.D. Ohio 2014).

For the present, the petitioner has not provided "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." That does not mean, however, that he may not be able to make that showing in the not-too-distant future, as the passage of time inevitably will cause "the 'reasonably foreseeable future' . . . to shrink." *Zadvydas*, 533 U.S. at 701.

III.

The petitioner has not shown that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C.A. § 2241(c)(3). Therefore, he is not entitled to a writ of habeas corpus. If travel orders for the petitioner are not forthcoming within the next two months, and ICE has no information on the prospect of their issuance, the petitioner may renew his request for the writ. For now, though, the petitioner's assertion that his detention is unconstitutional is premature.

-7-

Accordingly, the petitioner for writ of habeas corpus is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: April 12, 2016

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on April 12, 2016.

s/Susan Pinkowski
SUSAN PINKOWSKI

---